CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 18 2011

JULIA C. DUDLEY, CLERK
BY:
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BARBARA MAYS CURTIS, | ) |
| | ) Civil Action No. 7:10CV00534 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security, | ) By: Honorable Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

The plaintiff, Barbara M. Curtis, was born on August 17, 1958, and eventually completed her high school education. Mrs. Curtis also completed one year of college. Plaintiff has worked as a phlebotomist in a medical office. She last worked on a regular basis in 1996. On August 30, 2006, Mrs. Curtis filed an application for a period of disability and disability insurance benefits. In filing her application, plaintiff alleged that she became disabled for all forms of substantial gainful

employment on April 15, 1996, due to fibromyalgia, panic disorder, obsessive compulsive disorder, and bone spurs in her neck. Plaintiff now maintains that she has remained disabled to the present time. The record reveals that Mrs. Curtis met the insured status requirements of the Act through the third quarter of 2001, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to a period of disability and disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before September 30, 2001. See gen., 42 U.S.C. § 423(a).

Mrs. Curtis' claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated January 15, 2008, the Law Judge also determined that Mrs. Curtis was not disabled. The Law Judge found that at all relevant times prior to the termination of her insured status, plaintiff suffered severe impairments on the bases of fibromyalgia, cervical spondylosis, degenerative changes in the cervical spine, and panic disorder with agoraphobia. Despite these problems, the Law Judge determined that, at all relevant times on and before September 30, 2001, Mrs. Curtis retained sufficient functional capacity to perform light exertion not involving exposure to the public, heights, or moving machinery. Based on her inability to work with the public, the Law Judge ruled that Mrs. Curtis was disabled for her past relevant work as a phlebotomist. However, given her residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that Mrs. Curtis retained sufficient functional capacity to perform several light work roles existing in significant number in the national economy at all relevant times prior to the termination of her insured status. Accordingly, the Law Judge ultimately concluded that Mrs. Curtis was not disabled, and that she is not entitled to a period

of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Curtis has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The medical record strongly suggests that plaintiff is disabled at the present time. However, as to the period prior to the termination of her insured status, the court believes that the Administrative Law Judge might reasonably conclude that plaintiff's impairments had not reached a disabling level of severity. During this period, Mrs. Curtis suffered from fibromyalgia, mechanical dysfunction and related pain in her cervical spine, and several emotional problems, including panic disorder with agoraphobia, anxiety, and depression. As for plaintiff's physical problems, the Administrative Law Judge was able to rely on testimony from a medical advisor in concluding that plaintiff's difficulties did not reach a disabling level of severity at any time on or before September 30, 2001. As for Mrs. Curtis'

nonexertional problems, a psychiatrist who saw her during the relevant period produced treatment notes which indicate that plaintiff's symptoms were relatively well controlled with medication. Based on the testimony of the medical advisor, and given the clinical notes actually compiled during the relevant period of time, the court believes that there is substantial evidence to support the Law Judge's finding of residual functional capacity for light levels of activity not involving exposure to the public, heights, or moving machinery. The Law Judge relied on the testimony of a vocational expert in considering the extent to which plaintiff's vocational capacity is limited by her severe physical and emotional problems. The vocational expert ultimately identified several light work roles which Mrs. Curtis could have been expected to perform. The court finds that the vocational expert's testimony, and the assumptions under which the expert deliberated, are both reasonable and consistent with the evidence of record. It follows that there is substantial evidence to support the Law Judge's finding that Mrs. Curtis retained sufficient functional capacity for several specific light work roles at all relevant times prior to the termination of her insured status on September 30, 2001. Thus, the court concludes that the Commissioner's final decision is supported by substantial evidence, and that the Commissioner's disposition in this case must be affirmed.

On appeal to this court, and in a well considered and comprehensive memorandum, plaintiff argues that the Commissioner's final decision is deficient in several respects. First, Mrs. Curtis argues that the testimony of the medical advisor, Dr. Charles Cook, is "without any evidentiary value" because Dr. Cook failed to take several of her physical problems into account and "missed" certain notations in the clinical notes demonstrating the severity of her fibromyalgia. For the most part, this argument centers on plaintiff's belief that the medical advisor failed to consider many of the contemporary clinical findings of her treating physicians, Dr. Ronald S. Goings and Dr. Raymond

4

L. Claterbaugh. It is true that Dr. Claterbaugh treated Mrs. Curtis in the mid-1990s for pain in her neck and shoulders, as well as anxiety, depression, and panic attacks. However, Dr. Claterbaugh's notes suggest that Mrs. Curtis' condition could have been expected to significantly improve within a year's time so as to permit her to return to some form of work activity. (TR 207). Dr. Goings saw Mrs. Curtis in the late 1990s and early 2000s. He also detected a significant arthritic process in the neck and shoulders, and supervised a treatment regimen, including oral medications, steroid injections for pain control, and physical therapy. At a time well after termination of plaintiff's insured status, Dr. Goings opined that Mrs. Curtis is disabled. (TR 311, 380-81).

The difficulty with plaintiff's argument is that the medical advisor, Dr. Cook, had access to all the reports which plaintiff now cites in support of her assertion that Dr. Cook's assessment was incomplete. Dr. Cook explicitly took into account the clinical findings and reports from both Dr. Claterbaugh (TR 43) and Dr. Goings (TR 45). The simple fact is that the medical advisor's assessment of the clinical findings was different from that now urged by Mrs. Curtis. The medical advisor considered objective testing, including an MRI, as well as detailed neurologic and orthopaedic evaluations. (TR 43-45). The medical advisor considered the type of treatment provided to Mrs. Curtis as well as the extent of the objective findings. (TR 45). In terms of his assessment of the "trigger points" necessary for a diagnosis of fibromyalgia, Dr. Cook clearly assumed that Mrs. Curtis did have trigger points during the relevant period of time, and that the diagnosis of fibromyalgia was appropriate, though he questioned the actual number of demonstrated trigger points. (TR 45). Despite consideration of all of these physical manifestations, Dr. Cook opined that plaintiff could have been expected to perform functions consistent with light work activity at all times during the period of time under consideration. (TR 46).

In short, the court finds that the evidence does not undercut the assessment of the medical advisor. Simply stated, it appears that plaintiff merely disagrees with Dr. Cook's ultimate conclusion, and his decision to emphasize some of the medical findings over others. Nevertheless, it is well settled that it is within the province of the Commissioner to determine what weight to accord to various medical exhibits, and how best to resolve conflicts in the medical record. Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005). Likewise, it is for the Commissioner to decide issues of credibility, and to determine whether input from any medical source, or nonmedical source, is worthy of belief. Johnson v. Apfel, 240 F.3d 1145 (8th Cir. 2001). Based on the record before the court, the court finds substantial evidence to support the Commissioner's determination to credit Dr. Cook's opinion as to plaintiff's residual functional capacity during the period of time in question.

In a related argument, plaintiff contends that the Administrative Law Judge erred at step three of the sequential disability analysis, in that he failed to find that plaintiff's musculoskeletal problems met or equaled a listed impairment under Appendix 1 to Subpart P of the Administrative Regulations Part 404.[1] However, once again, the court believes that the Administrative Law Judge properly relied on the medical advisor's testimony in determining that Mrs. Curtis did not suffer from a listed impairment. (TR 43-44). Moreover, as for plaintiff's emotional problems, the Administrative Law Judge reasonably relied on the reports from two, nonexamining state agency psychologists in concluding that Mrs. Curtis' condition did not meet or equal a listed impairment. (TR 278, 298).

---

[1] Under 20 C.F.R. § 404.1520, the Administrative Regulations establish a five step sequential disability evaluation process. At step 3 of the sequential evaluation, a claimant is deemed to be disabled for all forms of substantial gainful employment if the claimant suffers from an impairment, or combination of impairments, which meets or equals a listed impairment in Appendix 1 to Subpart P of the Administrative Regulations Part 404.

6

The court finds substantial evidence to support the Law Judge's disposition under step three of the sequential disability evaluation.

Plaintiff also argues that the Administrative Law Judge ignored the opinion of her treating physician, Dr. Goings, that she is totally disabled. It is true that on April 27, 2007, Dr. Goings submitted a letter in which he noted that he had seen Mrs. Curtis since 1997 and that she is no longer capable of performing even sedentary work activity. However, Dr. Goings has offered no opinion as to plaintiff's condition on or before the termination of her insured status on September 30, 2001. In any event, the Administrative Law Judge properly determined to give greater weight to the assessment of the medical advisor in determining plaintiff's residual functional capacity during the period of time in which she still enjoyed insured status. As for Dr. Claterbaugh, the court again notes that some of his reports indicate that plaintiff could have been expected to return to some form of work activity in 1996. In short, even if plaintiff's opinion evidence is fully credited, the court does not believe that such evidence supports the conclusion that Mrs. Curtis became totally and permanently disabled for all forms of substantial gainful employment on or before September 30, 2001.

Mrs. Curtis also maintains that the Administrative Law Judge failed to give proper consideration to her emotional impairments. It is undisputed that plaintiff has suffered from depression, anxiety, and panic attacks, at least since the early 1990s. It appears that Dr. Claterbaugh referred her for psychiatric treatment. The medical record reveals that Dr. David B. Bronstettler, a psychiatrist, saw Mrs. Curtis on multiple occasions between January 7, 1998 and October 26, 2001. (TR 356-378). Stated succinctly, Dr. Bronstettler's clinical notes indicate that plaintiff's problems were relatively well controlled through administration of medication and other conservative

treatment measures. The court finds that the medical evidence simply does not support the assertion that plaintiff's nonexertional impairments were so severe as to constitute or contribute to an overall disability. The court believes that the Administrative Law Judge properly determined that, at the most, plaintiff's agoraphobic symptoms prevented performance of work activity involving exposure to the public.

Finally, Mrs. Curtis contends that the Administrative Law Judge's opinion fails to give proper consideration to the legal standards established by the United States Court of Appeals for the Fourth Circuit in considering "pain cases." Citing liberally from this court's recent decision in Breeden v. Astrue, 2010 WL 5313291 (W.D.Va. Dec 17, 2010) (No. 4:10CV00044)(denying motion for relief from judgment), which in turn relied on Craig v. Chater, 76 F.3d 585 (4th Cir. 1996) and Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), Mrs. Curtis asserts that her complaints of disabling pain during the relevant period should be fully credited, inasmuch as her medical evidence establishes that she suffered from a condition which could reasonably have been expected to produce such a level of subjective discomfort. However, the court does not agree. In the cases cited by plaintiff, it was undisputed that the claimant suffered from a condition which could have been expected to produce a disabling level of pain. For example, in Breeden v. Astrue, supra., the medical advisor explicitly testified at the hearing that the claimant suffered from a condition which could produce severe and disabling pain. In Mrs. Curtis' case, there is substantial dispute as to whether she suffered from severe and debilitating physical problems prior to the termination of her insured status on September 30, 2001. In the instant case, no doctor has suggested that plaintiff suffered from such severe and intractable medical problems prior to the termination of insured status as might give rise to a totally disabling level of subjective discomfort. At best, the medical evidence in this

case is in conflict, and the court believes that there is substantial evidence to support the Law Judge's reliance on the reports and testimony which indicate that plaintiff's impairments, and their subjective manifestations, had not reached a disabling level of severity on or before September 30, 2001.

In summary, while plaintiff's case has been well argued, the court must conclude that plaintiff's arguments are ultimately unavailing. For the reasons stated above, the court believes that the Commissioner's final decision denying plaintiff's claim for benefits is supported by substantial evidence. It follows that the Commissioner's final decision must be affirmed. In affirming the Commissioner's final decision, the court does not suggest that Mrs. Curtis was free of all pain, discomfort, and emotional difficulty prior to the termination of her insured status. Indeed, given the reports from her treating physicians as well as the regularity with which plaintiff sought treatment during this period, it is beyond question that Mrs. Curtis suffered from a very severe condition prior to the termination of her insured status, which could have been expected to result in significant symptoms. However, it must again be noted that the doctors who actually saw Mrs. Curtis during the critical period of time considered her complaints to be treatable. It must be recognized that the inability to do work without any subjective discomfort does not of itself render a claimant totally disabled. Craig v. Chater, supra at 594-95 (4th Cir. 1996). Once again, it appears to the court that the Administrative Law Judge considered all of the subjective factors reasonably supported by the medical record in adjudicating the plaintiff's claim for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the

Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 18th day of July, 2011.

/s/ Jack Conrad
Chief United States District Judge